**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Victoria Flores, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:17-cv-08674-AKH |
| v. | ) | |
| | ) | |
| ACE American Insurance Company, | ) | |
| a Pennsylvania corporation, | ) | |
| | ) | |
| Defendant. | | |

## DEFENDANT'S MOTION TO DISMISS COMPLAINT

Defendant ACE American Insurance Company ("ACE"), by and through its attorneys Walker Wilcox Matousek LLP, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the complaint filed against it by Victoria Flores ("Flores"). In support of its motion, ACE states as follows:

## INTRODUCTION

This case addresses the issue of whether ACE properly denied insurance coverage to its Insured, Grubhub Seamless Inc. ("Grubhub"), for the putative class action filed against Grubhub by Flores alleging negligent and/or willful violations of the Telephone Consumer Protection Act. Two express exclusions in the Digital Technology & Professional Liability Policy that ACE issued to Grubhub (the "Policy) apply to bar insurance coverage for the underlying Flores complaint. The first exclusion provides that there is no coverage available for any claim alleging, based upon, arising out of or attributable to any unsolicited electronic dissemination of communications by or on behalf of Grubhub to multiple actual or prospective customers of Grubhub's, *including but not limited to actions brought under the Telephone Consumer Protection Act*. The second exclusion provides that there is no coverage available for any claim alleging, based upon, arising out of or attributable to any violation of *consumer protection* laws.

By way of the instant complaint, Flores (as assignee of Grubhub) seeks to avoid application of these straight-forward and unambiguous exclusions.  In doing so, Flores first contorts the meaning of the word "multiple" in the Telephone Consumer Protection Act exclusion, and ignores statements in her own underlying complaint against Grubhub indicating that the text messages at issue were sent "*en masse*" to thousands of Grubhub customers.  Flores also incorrectly assumes that the exclusion for violation of consumer protection laws is somehow connected to the claim she made, but later dropped, alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.  However, the exclusion applies to *any* violation of consumer protection laws, including the alleged violation of the Telephone **Consumer Protection** Act.

## BACKGROUND FACTS

### The Underlying Lawsuit

Flores filed a putative class action suit against Grubhub in the Circuit Court of Cook County, Illinois, on March 31, 2016 (the "Underlying Lawsuit").  (Dkt. No. 1, ¶ 1, n.1).  A copy of the original complaint in the Underlying Lawsuit[1] is attached hereto as Exhibit A.  The Underlying Lawsuit alleges that Grubhub sent unauthorized text messages advertising Grubhub's restaurant partners to thousands of consumers' cellular telephones. (Exhibit A, ¶¶ 2, 23, 33).  The Underlying Lawsuit also alleges that Grubhub did not have express consent from its customers to send such text messages, and that Grubhub therefore violated the TCPA.  (Exhibit A, ¶ 3).  The Underlying Lawsuit asserts a single cause of action for willful and knowing violation of the Telephone Consumer Protection Act.  (Exhibit A, ¶¶ 38-44)**.**

---

[1] The Underlying Lawsuit was removed to the Northern District of Illinois, voluntarily dismissed, and refiled in the Circuit Court of Cook County, Illinois. The allegations of the operative complaint in the Underlying Lawsuit are materially identical to those of the original complaint, except as indicated herein.

**ACE's Denial of Coverage and the ACE Policy**

On July 28, 2016, ACE denied coverage for defense and indemnity for the Underlying

Lawsuit under the Policy.  (Dkt. No. 1, ¶ 24; Dkt. No. 1-3).  Specifically, ACE advised Grubhub

that the Policy expressly excludes coverage for the Underlying Lawsuit pursuant to Exclusion

CC, which states that the Insurer shall not be liable for Damages, Claims Expenses, Data Breach

Expenses, or Extortion Expenses on account of any Claim:

> alleging, based upon, arising out of or attributable to any unsolicited electronic
> dissemination of faxes, e-mails or other communications by or on behalf of the
> Insured to multiple actual or prospective customers of the Insured or any other third
> party, including but not limited to actions brought under the Telephone Consumer
> Protection Act . . . and/or any other federal or state statute, law or regulation relating
> to any person's or entity's right of seclusion.

(Dkt. No. 1-3, p. 2; Dkt. No. 1-1, p. 14 of 109, Section III.CC).

ACE also denied coverage under Policy Exclusion Y, which excludes coverage for

Damages, Claims Expenses, Data Breach Expenses, or Extortion Expenses on account of any

Claim "alleging, based upon, arising out of or attributable to false, deceptive or unfair business

practices or any violation of consumer protection laws."  (Dkt. No. 1-3, p. 2; Dkt. No. 1-1, p. 14

of 109, Section III.Y).[2]

**Grubhub Settles with Flores Without Paying Anything**

On April 6, 2017, Flores (individually and on behalf of the Settlement Class) and

Grubhub entered into a Settlement Agreement.  (Dkt. No. 1, ¶ 29).  The Settlement Agreement

defines the Settlement Class to include all persons who Grubhub sent text messages to requesting

feedback regarding their order experience with a particular restaurant between December 4,

---

[2] Shortly after sending its denial letter, ACE received an email from Grubhub's counsel attaching a letter
recommending that Grubhub agree to a proposed settlement term sheet and that ACE pay the proposed $4.75 million
settlement.  (Dkt. No. 1, ¶ 24, n.3).

2015, and April 2, 2016. (*Id.*)  The Settlement Agreement calls for a payment of $8 million in the form of a consent judgment against Grubhub.  (*Id.*)  Rather than Grubhub paying a single dollar toward the settlement amount, the Settlement Agreement provides that Flores and the Settlement Class would not seek to execute the consent judgment against Grubhub, and that Grubhub would assign to Flores and the proposed Settlement Class all claims and insurance policy proceeds under the ACE Policy to fund the settlement.[3]  (*Id.*)

## LEGAL STANDARDS

### Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility." *Ashcroft v. Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is only facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Furthermore, in reviewing a Rule 12(b)(6) motion, a court may consider exhibits attached to the complaint or incorporated by reference; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).  In this case, such documents include the Policy (attached as Exhibit A to the complaint, Dkt. No. 1-1), the complaint in the Underlying Lawsuit (referenced repeatedly in the complaint, attached hereto as

---

[3] Notably, the Policy does not permit any assignment of interest under the Policy unless there is a written endorsement signed by an authorized representative of the Insurer (Dkt. No 1-1, p. 21 of 109, Section XIX.B).

Exhibit A), and ACE's July 28, 2016 denial letter (attached as Exhibit C to the complaint, Dkt. No. 1-3).

**Standards of Contract Interpretation**

"Insurance policies are contracts to which the ordinary rules of contractual interpretation apply." *Accessories Biz, Inc. v. Linda and Jay Keane, Inc.*, 533 F.Supp.2d 381, 386 (S.D.N.Y. 2008). "Where the provisions of an insurance contract are clear and unambiguous, the courts should not strain to superimpose an unnatural or unreasonable construction." *Gerber v. Government Employees Ins. Co.*, 1994 WL 682453, at *1 (S.D.N.Y. Dec. 1, 1994); *see also*, *Standard General L.P. v. Travelers Indemnity Company of Connecticut*, 2017 WL 3601181, at *3 (S.D.N.Y. August 18, 2017) ("Courts must give clear and unambiguous provisions their plain and ordinary meaning"). Accordingly, courts will enforce policy exclusions "where they have a definite and precise meaning, unattended by danger of misconception … and concerning which there is no reasonable basis for a difference of opinion." *Brice v. State Farm Fire and Cas. Co.*, 761 F.Supp.2d 96, 99 (S.D.N.Y. 2010) (internal citations and quotations omitted).[4]

## ARGUMENT

### A.    Exclusion CC Precludes Coverage for the Underlying Lawsuit

The Telephone Consumer Protection Act exclusion (Exclusion CC), clearly excludes coverage for the Underlying Lawsuit. Specifically, Exclusion CC precludes coverage for any Claim "alleging, based upon, arising out of or attributable to any unsolicited dissemination of

---

[4] "It is well settled that because the duty to defend is broader than the duty to indemnify, a finding by the court that there is no duty to defend automatically means that there is no duty to indemnify." *Boyce Thompson Institute for Plant Research, Inc. v. Insurance Co. of North America*, 751 F. Supp. 1137, 1144 (S.D.N.Y. 1990); *see also*, *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2nd Cir. 1990) ("Initially we note that the duty to defend is broader than the duty to indemnify. Thus, it is unnecessary to engage in a separate analysis of Aetna's independent claim that it has no duty to indemnify apart from both insurers' claims that they have no obligation to defend."). Accordingly, to the extent that the Court determines that ACE has no duty to defend the Underlying Lawsuit, it also has no duty to indemnify.

faxes, emails or other communications by or on behalf of the Insured to multiple actual or prospective customers of the Insured or any other third party, including but not limited to actions brought under the Telephone Consumer Protection Act . . . ."  The Underlying Lawsuit is a Claim that alleges thousands of violations of the Telephone Consumer Protection Act, which Act is explicitly mentioned as falling within the scope of Exclusion CC. The unambiguous language of the exclusion therefore applies.  *See*, *Brice*, 761 F.Supp.2d at 99.

In an attempt to plead around the unambiguous language of Exclusion CC, Flores argues that the text messages at issue in the Underlying Lawsuit were not "directed to multiple individuals or shared by many" and that they were instead "tailored to each individual class member regarding their individual experiences with the Grubhub service and the particular restaurant from which they had ordered."  (Dkt. No. 1, ¶ 17).  However, this impermissibly strains the language of the unambiguous exclusion.  *See Gerber*, 1994 WL 682453, at *1. Exclusion CC does not require that the texts be sent "*en masse*" or that they be "shared by many" for it to apply; rather, the exclusion precludes coverage for any Claim alleging, based upon, arising out of or attributable to any unsolicited communications on behalf of Grubhub to "multiple actual or prospective customers."  There can be no debate that the Underlying Lawsuit alleges that text messages were sent to multiple customers; after all, the Underlying Lawsuit was filed as a class action.  Importantly, there is nothing in the language of the exclusion requiring that all the texts be identical, or that they all be sent at once.  Accordingly, Exclusion CC applies to completely preclude coverage for the Underlying Lawsuit.

Flores also argues that Exclusion CC is not broad enough to cover the allegedly "individualized" text messages at issue because the exclusion only "applies to messages or phone calls that are transmitted or made *en masse—i.e.*, to multiple recipients at once—as part of spam

or mass marketing campaigns." (Dkt. No. 1, ¶ 35). This allegation ignores the plain language of the exclusion and even flies in the face of what Flores actually pled in the Underlying Lawsuit. Specifically, Flores's complaint in the Underlying Lawsuit states that "Grubhub made the same (or substantially the same) text message advertising calls *en masse* to thousands of cellular telephone numbers." (Exhibit A, ¶ 23). Thus, even assuming that Flores were right about the exclusion requiring that the text messages at issue be sent *en mass*e—which she is not—the Underlying Lawsuit is pled such that it would trigger the terms of the much narrower, imaginary exclusion Flores argues against.

### B.    Exclusion Y Precludes Coverage for the Underlying Lawsuit

Exclusion Y also excludes the Underlying Lawsuit in its entirety. Exclusion Y provides that there is no coverage for any Claim "alleging, based upon, arising out of or attributable to false, deceptive or unfair business practices *or any violation of consumer protection laws*." (emphasis added). The Underlying Lawsuit alleges a single cause of action for violation of the Telephone **Consumer Protection** Act. Indeed, as the name implies, one of the purposes of the Telephone Consumer Protection Act is to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls. . . ." *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Servs., Ltd.*, 975 F. Supp. 329, 330 (S.D.N.Y. 1997), aff'd, 156 F.3d 432 (2d Cir. 1998) (emphasis added). The Underlying Lawsuit is therefore a Claim alleging a violation of "consumer protection" laws, namely the Telephone Consumer Protection Act, and Exclusion Y applies to preclude coverage.

The footnote in Flores's complaint briefly addressing Exclusion Y is a red herring. (Dkt. No. 1, ¶ 34, n.4) The fact that the operative complaint in the Underlying Lawsuit dropped the cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act is

immaterial given that the operative complaint continues to assert a cause of action under another consumer protection law: the Telephone Consumer Protection Act.  Flores's complaint fails to state a claim upon which relief can be granted.

## **CONCLUSION**

WHEREFORE, Defendant ACE American Insurance Company respectfully requests that the Court grant this motion and dismiss the Complaint, with prejudice, and that the Court grant such other and permanent relief as is just and proper.

Dated: January 8, 2018                                   **Respectfully Submitted,**

<u>       /s/ Arthur J. McColgan       </u>
Arthur J. McColgan
WALKER WILCOX MATOUSEK LLP
1 North Franklin Street – Suite 3200
Chicago, Illinois   60606
Telephone:  312-244-6700
Facsimile:   312-244-6800
amccolgan@wwmlawyers.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **Defendant's Rule 12(b)(6) Motion to Dismiss Complaint** was electronically filed using the CM/ECF system and will be sent electronically via ECF to all attorneys of record on January 8, 2018.


By:  /s/ Arthur J. McColgan