**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Victoria Flores, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:17-cv-08674-AKH |
| v. | ) | |
| | ) | |
| ACE American Insurance Company, | ) | |
| a Pennsylvania corporation, | ) | |
| | ) | |
| Defendant. | | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

Defendant ACE American Insurance Company ("ACE") respectfully submits this reply in support of its motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, and states as follows:

## INTRODUCTION

Plaintiff's response brief does not actually respond to many of the points and arguments that ACE raised in its motion to dismiss. Plaintiff's response does not present any logical explanation for why the underlying Telephone Consumer Protection Act ("TCPA") claim is not excluded by Exclusion CC, which *expressly excludes* TCPA actions. Plaintiff also does not advance any credible arguments as to why Exclusion Y, which applies to any violation of *consumer protection* laws, does not also apply to independently exclude coverage in this matter. Moreover, even if the Court were to accept Plaintiff's bizarre and contorted meaning of the word "multiple" in the TCPA exclusion, Plaintiff ignores statements in her own underlying complaint against Grubhub indicating that the text messages at issue were, in fact, sent "*en masse*" to thousands of Grubhub customers.

Rather than address the coverage issues at hand, Plaintiff suggests that ACE's 12(b)(6) motion is procedurally improper (which, as detailed below, is incorrect), and implies bad faith by

ACE (which is conspicuously not pled as a cause of action in her complaint, and is irrelevant in any event because ACE has no duty to defend in the first place).  Plaintiff seems to be playing up these farcical arguments because she has placed herself in a precarious position.  Specifically, Plaintiff entered into a settlement with Grubhub, the party that she alleges injured her and the other class members, which does not require Grubhub to pay a single dollar.  Moreover, for reasons that remain unclear, Plaintiff agreed that she could only seek recovery under an insurance policy where coverage had already been denied *months before*, and stipulated to a judgment that exceeds the policy's stated limits by $3 million.[1]  Presumably in an effort toward an easier route for approval of this bizarre settlement, Plaintiff transferred the Underlying Lawsuit from Illinois federal court to Illinois state court, where she still has not obtained preliminary approval.

Finally, contrary to Plaintiff's arguments, dismissal of Plaintiff's complaint under Rule 12(b)(6) is not premature.  Plaintiff attached the Policy to her complaint in this action, and repeatedly referenced the Underlying Lawsuit in her complaint as well.  The Court can consider these documents, which establish that Plaintiff is not entitled to the relief she seeks, meaning that the Plaintiff has effectively pled herself out of court.

## ARGUMENT

### A.    New York Law Applies to the Coverage Analysis in this Matter

As an initial matter, Plaintiff incorrectly states that Illinois law governs interpretation of the Policy at issue here.[2]  Oddly, Plaintiff correctly lays out New York's choice of law

---

[1] To boot, the Policy did not permit Grubhub to assign its interest to Plaintiff in the first place without a written endorsement signed by an ACE representative.  (Dkt. No 1-1 at 20, Section XIX.B).

[2] To the extent that the Court finds that Illinois law applies in this case (which ACE disputes), ACE believes that New York and Illinois rules of policy interpretation are substantially similar and that the application of one state's law versus the other would not affect the outcome of this case.  Nevertheless, if the Court determines that Illinois

principles, but wrongly concludes that Grubhub was domiciled in Illinois with its principle place

of business in Chicago.  As Plaintiff acknowledges, it is not where Grubhub was domiciled at the

time of the filing of the Underlying Action that matters, but where Grubhub was domiciled at the

time of contracting for the Policy.  *Travelers Cas. & Sur. Co. v. Honeywell Int'l, Inc.*, 880

N.Y.S.2d 66, 67 (N.Y. App. Div. 2009); (Dkt. No. 33 at 5).  The Policy, which has a policy

period beginning on April 16, 2015, lists Grubhub's principal address as "1065 Avenue of the

Americas, 15th Floor, New York, NY 10018."  (Dkt. No. 1-1 at 2, Item 1).  Accordingly, even if

Grubhub relocated to Illinois prior to the filing of the Underlying Lawsuit (March 31, 2016), its

state of domicile as of the time of contracting for the Policy was New York.[3]  New York law

thus applies to issues of contract interpretation.[4]

### B.    Exclusion CC Precludes Coverage for the Underlying Lawsuit

In order to avoid the application of the clear and unambiguous language of Exclusion CC,

Plaintiff tries to twist and contort the meaning of the word "multiple" in the exclusion.

Specifically, Plaintiff argues that the language of the exclusion "[m]akes clear that it applies to

messages or phone calls that are transmitted to *multiple* recipients, seemingly at once, as part of

spam or mass marketing campaigns. . . ."  (Dkt. No. 33 at 14-15) (emphasis in original).  But the

plain language of the exclusion nowhere states that the messages or phone calls must be made "at

---

law applies, ACE requests that the Court permit it to file a supplemental brief addressing the substantive differences, if there are any, between New York and Illinois law on policy interpretation issues.

[3] Notably, the Underlying Lawsuit was brought by Flores, so the allegation that Grubhub had its principal place of business in Illinois is simply that—an allegation by Flores.  As of the filing of this motion, Grubhub has not filed a responsive pleading in the Underlying Lawsuit admitting or denying this allegation.

[4] In light of her argument for Illinois law, it is odd that Plaintiff chose to bring this coverage action in New York, where neither she nor ACE is domiciled.  Her argument that Illinois law applies (and her allusion in her response brief to the Illinois bad faith statute, despite not pleading a claim for bad faith) begs the question of why she chose New York as the forum for this litigation.  ACE on the other hand asserts that New York law applies to issues of policy interpretation and that New York is the most appropriate forum for this dispute.

once" or "as part of spam or mass marketing campaigns"; the exclusion simply states that there is

no coverage for any Claim "alleging, based upon, arising out of or attributable to any unsolicited

electronic dissemination of faxes, emails or other communications by or on behalf of the Insured

to multiple actual or prospective customers of the Insured or any other third party, including but

not limited to actions brought under the Telephone Consumer Protection Act . . . ."  Plaintiff is

not allowed to read language into the exclusion that does not exist.  *Newman Myers Kreines*

*Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 328 (S.D.N.Y. 2014) ("Where the

provisions of a policy are clear and unambiguous, they must be given their plain and ordinary

meaning, and courts should refrain from rewriting the agreement") (internal quotations and

citations omitted).

      In order to reach her desired result, Plaintiff even glosses over some of the alternate

definitions for "multiple" that she herself advances.  For example, Plaintiff must admit that the

exclusion would apply if the word "multiple" in the Policy were replaced with "consisting of,

including, or involving more than one" or "many."  The Underlying Lawsuit that Plaintiff herself

filed against Grubhub is a class action lawsuit.  Thus, there is no dispute that the text messages at

issue were sent to "more than one" or "many" of Grubhub's customers.  Instead, Plaintiff latches

onto the definition "shared by many," hoping that that definition carries with it an implicit

temporal element as having to be "shared by many *at once*."  Again, the dictionary definition

advanced by the Plaintiff does not contain these words.

      But even if the Court were to somehow read Exclusion CC to only apply to texts sent at

once or *en masse*, **this is exactly what Plaintiff herself alleged in the Underlying Lawsuit**.

Plaintiff's complaint in the Underlying Lawsuit states that "Grubhub made the same (or

substantially the same) text message advertising calls *en masse* to thousands of cellular telephone

numbers." (Dkt. 15-1, ¶ 23). Thus, even assuming that Plaintiff were correct about Exclusion CC requiring the text messages at issue to be sent at once or *en masse*, the facts she pled in the Underlying Lawsuit would still trigger the exclusion.[5] Since Plaintiff (as Grubhub's assignee) is in the unique position of seeking coverage for the Underlying Lawsuit that she herself filed, the Court should not allow her to escape the reality of the facts as she has laid them out in the underlying complaint; namely, facts confirming that Exclusion CC applies. [6]

Next, the case law that Plaintiff cites involving Illinois courts interpreting TCPA exclusions actually supports ACE's argument. As Plaintiff surprisingly acknowledges, the Illinois Appellate Court in both *G.M. Sign, Inc. v. State Farm Fire & Cas. Co.*, 18 N.E.3d 70 (Ill. App. Ct. 2014) and *Fayezi v. Ill. Cas. Co.*, 58 N.E.3d 830 (Ill. App. Ct. 2016) held in favor of the insurer and enforced clear and unambiguous TCPA exclusions. Plaintiff seems to suggest that these cases support her argument because "ACE could have (but did not) included in its Policy language like that from *G.M. Sign* and *Fayezi* that has been found to be significantly broader in scope . . . ." (Dkt. No. 33 at 17). Neither of these cases compared the language in the TCPA exclusions at issue to the language found in the ACE Policy. Stated another way, just because

---

[5] The Court should also take judicial notice of Plaintiff's Memorandum in Support of Preliminary Approval of Class Action Settlement filed on February 5, 2018 in the Underlying Lawsuit, and attached as Exhibit A hereto. *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) ("[T]he court may take judicial notice of public records and of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action") (internal quotations and citations omitted). In her Memorandum in Support of Preliminary Approval, Plaintiff confirms that Grubhub sent unsolicited text messages to "thousands of customers" (Ex. A at 3), then later claims that discovery has revealed that "there are likely more than one million class members in question here." (Ex. A at 10-11). Whether it is thousands or over a million, the Underlying Lawsuit certainly involves texts sent to "multiple" customers by Plaintiff's own admission.

[6] Plaintiff claims that Paragraph 17 of the Underlying Lawsuit states that the texts at issue were "transmitted individually at separate, discrete times, not in bulk to more than one person at a time." (Dkt. No. 33 at 15). This is not true. Paragraph 17 of the Underlying Lawsuit states "After the customer receives their order, Grubhub will continue to send them unwanted text messages (often a day later) advertising its restaurant partners, including messages like: GrubHub here! Tell your neighbors about [name of restaurant]. Reply STOP to stop these texts. Was your delivery on time? (Yes/No)." (Dkt. No. 15-1 at ¶ 17). In fact, Paragraph 17 says nothing at all about whether the texts were sent separately, at discrete times, in bulk, or to more than one person at a time.

the ACE Policy's TCPA language is different than the exclusionary language in *G.M. Sign* and *Fayezi* does not mean that the ACE language is narrower. *See Fayezi*, 58 N.E.2d at 845 ("While the phrasing of the State Farm exclusion [in *G.M. Sign*] for damages to injury 'arising directly or indirectly out of any action or omission that violates' the TCPA is undoubtedly broad, we do not find that the wording of ICC's policy exclusions [in *Fayezi*] for '[a]ny liability or legal obligation of any insured with respect to' injuries 'arising out of' the TCPA is narrower in scope. Rather, the phrases 'any liability or legal obligation,' 'with respect to,' and 'arising out of' are plainly broad in meaning"). Exclusion CC contains similarly broad language: "*alleging, based upon, arising out of or attributable to any* unsolicited electronic dissemination of faxes, emails or other communications *by or on behalf of* the Insured to multiple *actual or prospective customers* of the Insured or any other third party, *including but not limited to* actions brought under the Telephone Consumer Protection Act . . . ." (Dkt No. 1-1 at 13) (emphasis added).

Finally, Plaintiff points to other portions of the ACE Policy where broad "any" language is used to suggest that Exclusion CC is not as broad by comparison. However, Exclusion CC has the same broad "any" language that Plaintiff points to in Exclusions B, F, and H. In fact, each exclusion in the Policy has the same broad prefatory language. The full context of Exclusion CC is:

> III.    EXCLUSIONS
>
> The Insurer shall not be liable for Damages, Claims Expenses, Data Breach Expenses, or Extortion Expenses on account of *any* Claim: . . .
>
> *             *             *
>
> CC.    alleging, based upon, arising out of or attributable to *any* unsolicited electronic dissemination of faxes, emails or other communications by or on behalf of the Insured to multiple actual or prospective customers of the

> Insured or any other third party, including but not limited to actions brought under the Telephone Consumer Protection Act . . . .

(Dkt. No. 1-1 at 10, 13) (emphasis added).  Exclusion CC therefore has the exact language that the Plaintiff acknowledges applies broadly in other exclusions in the Policy.  Exclusion CC applies to *any* Claim alleging, based upon, arising out of, or attributable to *any* unsolicited texts sent by Grubhub to multiple actual or prospective customers, including TCPA actions.  The Underlying Lawsuit is such an action, and is therefore excluded by Exclusion CC.[7]

### C.    Exclusion Y Precludes Coverage for the Underlying Lawsuit

Exclusion Y also separately excludes coverage for the Underlying Lawsuit in its entirety.  Plaintiff contends that Exclusion Y does not apply because it renders the insuring agreement illusory and because Exclusion Y is not a blanket exclusion for all claims alleging a violation of any consumer protection law.  The first contention is wrong and the second is simply a strawman argument based on faulty principles of policy interpretation.

More specifically, Plaintiff claims that if Exclusion Y excludes coverage for a TCPA lawsuit as a Claim alleging a violation of a consumer protection law, that it runs counter to the language in Insuring Agreement D, which provides that ACE will cover "an unintentional violation of the Insured's privacy policy that results in the violation of any Privacy Regulation." (Dkt. No. 1-1 at 4, Section I.D; 10, Section II.OO.4.b.).  Plaintiff contends that the TCPA is such

---

[7] Plaintiff suggests that Exclusion CC is somehow rendered ineffective because there may be situations where coverage could have existed, such as if Plaintiff failed to certify a class, or presumably, if Plaintiff alleged a single TCPA violation based on a single text sent to only her.  First of all, for the purpose of analyzing coverage, the Court cannot consider these hypothetical situations.  Rather, it can only analyze the allegations in the Underlying Lawsuit before it, which are excluded by Exclusion CC.  However, for the sake of argument, if Plaintiff failed to certify a class or brought a TCPA claim based on a single text message sent just to her, ACE acknowledges that Exclusion CC might not apply in that situation, but notes that even the highest amount of damages that Plaintiff could seek in such an individual lawsuit would fall within Grubhub's retention.  Moreover, as discussed below, Exclusion Y would still preclude coverage for such an individual claim.

a Privacy Regulation, and that coverage under the Policy is therefore illusory if there is coverage for violation of such Privacy Regulations that is then excluded by Exclusion Y.

Plaintiff's arguments that the TCPA could fall within the definition of Privacy Regulations covered by Insuring Agreement D are both misguided and unsupported. First, even if the Plaintiff's cited case law generally stands for the proposition that the TCPA protects privacy interests, the TCPA does not fit within the ACE Policy definition of "Privacy Regulations," which states that "Privacy Regulations means the following: statutes and regulations associated with the control and use of personally identifiable financial, medical or other sensitive information . . . ." (Dkt. No. 1-1 at 8, Section II.EE.). The TCPA is not such a statute or regulation. Second, the TCPA is not listed as one of the five statutes or regulations specifically listed within the definition of "Privacy Regulations." (Dkt. No. 1-1 at 8, Section II.EE.). Third, the TCPA does not fit within subparagraph 6. of the definition, because the TCPA is not "legislation that requires commercial entities that collect Personal Information to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that Personal Information has potentially been compromised." (Dkt. No. 1-1 at 8, Section II.EE.6.).

Fourth, although decided under Illinois law, *Doctors Direct Insurance, Inc., v. Bochenek*, 38 N.E.3d 116 (Ill. App. Ct. 2015), addresses this same issue in connection with almost identical insuring agreement language. *Doctors Direct* confirms that the TCPA is not "associated with the control and use of personally identifiable financial, credit, or medical information." *Id.* at 125. Notably, the *Doctors Direct* court also pointed out that the TCPA "only prohibits the actual making of certain kinds of calls. The statute does not address how a caller might control or use

personally identifiable financial, credit, or medical information either before or after the call is made." *Id.* at 124.

Furthermore, even if the TCPA were somehow considered a "Privacy Regulation" as defined in the Policy, the exclusion of a TCPA lawsuit under Exclusion Y would not render coverage under the Policy illusory.  In so arguing, Plaintiff ignores how insurance generally works—broad insuring agreements state a general grant of coverage that is then narrowed by applicable exclusions—and misunderstands what it means for coverage to be illusory. "Insurance coverage is illusory where the insured purchases no effective protection. . . . An insurance policy is not illusory if it provides coverage for some acts; it is not illusory simply because of a potentially wide exclusion." *Aspen Specialty Ins. Co. v. 4 NYP Ventures, LLC*, 162 F. Supp. 3d 337, 345 (S.D.N.Y. 2016) (internal citations and quotations omitted).

In this case, the Policy would still provide coverage for any unintentional violation of an insured's privacy policy that results in the violation of any Privacy Regulation that is not a consumer protection law or other law excluded by Exclusion Y.  Accordingly, an unintentional violation of an insured's privacy policy that results in, for example, a violation of the five enumerated privacy regulations listed in the "Privacy Regulation" definition in the Policy (HIPAA, Gramm-Leach-Bliley, etc.) would potentially be covered under the Policy (assuming no other applicable exclusions or policy conditions).  Plaintiff's cry of illusory coverage is insincere.

Plaintiff's final argument is essentially a tortured reading of Exclusion Y.  Once again, Exclusion Y provides that there is no coverage for any Claim "alleging, based upon, arising out of or attributable to false, deceptive or unfair business practices or any violation of consumer protection laws."  Plaintiff claims that the phrase "any violation of consumer protection laws" is

modified by the phrase "false, deceptive or unfair business practices."  In other words, Plaintiff suggests that in order for the exclusion to apply, the Claim at issue must allege, be based upon, or arise out of, or be attributable to a statute that speaks to false, deceptive, or unfair business practices *and* involve a violation of consumer protection laws.  This ignores the plain language of the Policy, which excludes any Claim alleging, based upon, arising out of false, deceptive or unfair business practices *or* any violation of consumer protection laws.  Since the clear and unambiguous language of the Exclusion states a disjunctive "or" (rather than a conjunctive "and"), Exclusion Y applies to a statute like the TCPA that is a consumer protection law, without even needing to answer the question of whether the TCPA also involves false, deceptive, or unfair business practices.  The Plaintiff's strained interpretation is impermissible under basic rules of policy interpretation. *Gerber v. Government Employees Ins. Co.*, 1994 WL 682453, at *1 (S.D.N.Y. Dec. 1, 1994) ("Where the provisions of an insurance contract are clear and unambiguous, the courts should not strain to superimpose an unnatural or unreasonable construction").

Again, the Underlying Lawsuit alleges a single cause of action for violation of the Telephone **Consumer Protection** Act.  The Underlying Lawsuit is therefore a Claim alleging a violation of a "consumer protection" law, and Exclusion Y applies to preclude coverage.

### D.    Plaintiff Does Not and Cannot Assert a Claim for Bad Faith

Plaintiff's complaint asserts a single cause of action for a declaratory judgment that ACE breached its duty to defend.  (Dkt. No. 1 at 9).  It conspicuously does *not* assert a cause of action for bad faith.  Moreover, there can be no bad faith where, as here, coverage does not exist in the first place. *United States Fid. & Guaranty Co. v. Ashley Reed Trading, Inc.*, 43 F.Supp.3d 271, 281 (S.D.N.Y. 2014) (citing *Zurich Ins. Co. v. Texasgulf, Inc.*, 233 A.D.2d 180, 180-81 (N.Y.

App. Div. 1996) ("[A] claim of bad faith must be predicated on the existence of coverage of the loss in question . . . . This is especially true in New York where a mere arguable basis for the insurer's denial of coverage has been sufficient to defeat, as a matter of law, a claim of bad faith")).  Since bad faith is not pled, and cannot be pled under the circumstances, Plaintiff's in-depth discussion about the timing of ACE's denial letter is irrelevant, and her request for discovery on the timing of ACE's denial letter and other issues allegedly related to bad faith rings hollow.

Although Plaintiff cannot assert bad faith, her claim that ACE "never responded" to Grubhub's tender of the Underlying Lawsuit is both false and contradicted by statements in her own brief.  (Dkt. No. 33 at 3).  As Plaintiff acknowledges, the Underlying Lawsuit was filed against Grubhub on March 31, 2016.  (Dkt. No. 33 at 3).  Grubhub tendered the claim to ACE in April 2016, removed the Underlying Lawsuit to federal court in May 2016, and reached a settlement in principle shortly afterwards in July 2016, about three or four months after the original complaint was filed.  (Dkt. No. 33 at 3).  Plaintiff then concedes that ACE refused coverage after Grubhub recommended the settlement in principle to ACE.  (Dkt. No. 33 at 3).  The final settlement agreement—which contained different terms than the settlement in principle that was discussed in July 2016—was not signed until months later in April 2017.  (Dkt. No. 1 at ¶ 29).  Regardless of whether ACE's denial came before, after, or was concurrent with Grubhub's initial recommendation of settlement, Plaintiff cannot now claim that ACE "never responded" to Grubhub's tender of the claim when its own complaint and brief acknowledge that

ACE issued its denial no more than four months after the initial complaint in the Underlying Lawsuit was filed.

Moreover, even if Plaintiff did or could plead bad faith based on ACE's alleged failure to promptly notify Grubhub about its denial of coverage, that would not, as Plaintiff claims, amount to a waiver or estoppel with respect to application of Exclusion CC or Exclusion Y. Those exclusions apply regardless of any alleged delay in denying coverage, as the existence or nonexistence of coverage cannot be waived. *Albert J. Schiff Associates, Inc. v. Flack*, 417 N.E.2d 84, 87 (N.Y. 1980) ("So, where the issue is the existence of nonexistence of coverage (e.g. the insuring clause and exclusions), the doctrine of waiver is simply inapplicable"); *Mount Vernon Fire Ins. Co. v. Riccobono*, 1999 WL 777863, at *2 (S.D.N.Y. 1999) ("Under established New York law, an insurer cannot create coverage where none exists under the policy as written by failure to disclaim on the basis that the claim is outside the scope of coverage"); *Frankart Distributors, Inc. v. Federal Ins. Co.*, 616 F. Supp. 589, 592 (S.D.N.Y. 1985) ("Since the duty to defend is incident to coverage, that duty also cannot be created by waiver"). Stated another way, Plaintiff cannot claim waiver of coverage based on the three to four months it took ACE to issue a denial letter, when under well-settled New York law, there would be no waiver even if ACE had never responded to Grubhub's tender of the Underlying Lawsuit.

### E.     Dismissal of Plaintiff's Complaint Under Rule 12(b)(6) is Procedurally Proper

Notwithstanding the coverage arguments above, Plaintiff argues that, as a procedural matter, ACE's request for dismissal of Plaintiff's complaint under Rule 12(b)(6) is premature. In making this argument, however, Plaintiff misunderstands the operation of Rule 12(b)(6).

As discussed in ACE's motion to dismiss, the Court may dismiss a complaint under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When determining whether a complaint states such a claim, the Court is generally limited to considering the factual allegations pleaded in the complaint, which the court must usually accept as true. *Eastern Baby Stores, Inc. v. Central Mut. Ins. Co.*, 2008 WL 2276527, at *1 (S.D.N.Y. June 2, 2008).

An exception to that rule exists, however, when the plaintiff attaches exhibits to the complaint that contradict his or her allegations and establish the futility of plaintiff's claims. In that event, the exhibits trump the plaintiff's allegations, and where a complaint relies on a contract like an insurance policy, "a court need not accept the plaintiff's allegations of the complaint with respect to the construction of [the policy's] terms . . . ." *Golasiewski v. Waste Mgmt. of Pennsylvania, Inc.*, 2011 WL 2133788, at *2 (E.D.N.Y May 27, 2011). Thus, where a plaintiff's declaratory judgment cause of action arises out of an insurance policy that is attached to the complaint as an exhibit, and the attached policy shows unambiguously on its face that the relief requested is not merited, dismissal on a Rule 12(b)(6) motion is both justified and appropriate. *Golasiewski*, 2011 WL 2133788 at **3-6 (insurer's motion to dismiss insured's declaratory judgment complaint granted after court considered contracts attached to complaint and insurance policies repeatedly referenced in complaint and offered by insurer in connection with its motion to dismiss); *see also Mikaelian v. Liberty Mut. Ins.*, 2016 WL 4702106, at **6-9 (E.D.N.Y. Sept. 8, 2016) (granting insurer's Rule 12(b)(6) motion to dismiss the insured's action for breach of contract, bad faith, and declaratory judgment).

In this case, Plaintiff attached the Policy as an exhibit to her complaint, and her complaint also repeatedly references the complaint in the Underlying Lawsuit.[8] These documents establish

---

[8] Although not attached to Plaintiff's complaint, the Court is permitted to take judicial notice of the complaint in the Underlying Lawsuit and treat it as if it were attached to Plaintiff's complaint in this action for purposes of a 12(b)(6) motion. *International Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (even if a plaintiff chooses not to attach a document to the complaint or incorporate a document by reference, a court can still

that Plaintiff is not entitled to the relief she seeks.  Specifically, under New York law, the Court determines whether an insurer has a duty to defend by comparing the factual allegations in the underlying complaint to the policy language.  *Accessories Biz, Inc. v. Linda and Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008).  "If, however, the factual allegations of the underlying complaint indicate that there is no basis for recovery within the coverage of the policy . . . , [a court] may sustain [the insurer's] refusal to defend."  *Id.* (citations omitted); *see also Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d 255, 267 (E.D.N.Y. 2014) ("[I]f the allegations against the insured clearly do not fall within the coverage provisions of the insurance policy or fall within one or more coverage exclusions, then the insurer owes no duty to defend the insured").

Here, as discussed above, a comparison of the allegations in the Underlying Lawsuit to the Policy's terms reveals that the Underlying Lawsuit is excluded from coverage under both Exclusion CC and Exclusion Y.  Accordingly, Plaintiff cannot obtain a judgment declaring that ACE breached its duty to defend and that ACE has to pay the judgment in the Underlying Lawsuit.  The Court may properly dismiss Plaintiff's complaint under Rule 12(b)(6).[9]

## CONCLUSION

For the reasons stated above, Defendant ACE American Insurance Company respectfully requests that the Court grant its motion and dismiss the Complaint, with prejudice, and that the Court grant such other and permanent relief as is just and proper.

---

consider the document on a motion to dismiss where the complaint relies on the document and if the document is integral to the complaint).  For reference, a copy of the Complaint from the Underlying Lawsuit was attached as an exhibit to ACE's motion to dismiss (Dkt. No. 15-1).  *See, I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) (if plaintiff fails to attach a pertinent document to its complaint, defendant may introduce the document as an exhibit to its motion attacking the pleading).

[9] Stated another way, ACE is not arguing with Plaintiff's case law that states that a declaratory judgment is a proper procedural vehicle for presenting insurance coverage disputes to the court; rather, ACE asserts that such a declaratory judgment complaint is still subject to a Rule 12(b)(6) motion to dismiss under these circumstances.

Dated: March 13, 2018                         Respectfully Submitted,

                                                 /s/ Arthur J. McColgan
                                              Arthur J. McColgan
                                              WALKER WILCOX MATOUSEK LLP
                                              1 North Franklin Street – Suite 3200
                                              Chicago, Illinois   60606
                                              Telephone:  312-244-6700
                                              Facsimile:   312-244-6800
                                              amccolgan@wwmlawyers.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **Defendant's Reply in Support of its Motion to Dismiss Complaint** was electronically filed using the CM/ECF system and will be sent electronically via ECF to all attorneys of record on March 13, 2018.


By:  /s/ Arthur J. McColgan

16